**2022 WI APP 50**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2021AP392

†Petition for Review filed

Complete Title of Case:

> **CHARLES ROOD,**
>
> > **PLAINTIFF-APPELLANT,†**
>
> **SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,**
>
> > **INVOLUNTARY-PLAINTIFF-RESPONDENT,**
>
> > **V.**
>
> **SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA AND RANDALL RADEMAKER,**
>
> > **DEFENDANTS-RESPONDENTS,**
>
> **MT. MORRIS MUTUAL INSURANCE COMPANY,**
>
> > **DEFENDANT.**

| | |
|---|---|
| Opinion Filed: | August 16, 2022 |
| Submitted on Briefs: | September 29, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

Appellant

ATTORNEYS:          On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Garett T. Pankratz* and *James G. Curtis* of *Hale*, *Skemp, Hanson, Skemp & Sleik*, La Crosse.

Respondent
ATTORNEYS:          On behalf of the defendant-respondent, Selective Insurance Company of South Carolina, the cause was submitted on the brief of *Ruth S. Marcott* and *Nathan T. Boone* of *Kutak Rock LLP*, Minneapolis, Minnesota.

On behalf of the defendant-respondent, Randall Rademaker, the cause was submitted on the brief of *Lawrence J. Drabot* of *Crivello Carlson, S.C.*, Milwaukee

COURT OF APPEALS
DECISION
DATED AND FILED

August 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP392**

STATE OF WISCONSIN

Cir. Ct. No.  **2018CV403**

IN COURT OF APPEALS

---

CHARLES ROOD,

   PLAINTIFF-APPELLANT,

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,

   INVOLUNTARY-PLAINTIFF-RESPONDENT,

V.

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA AND
RANDALL RADEMAKER,

   DEFENDANTS-RESPONDENTS,

MT. MORRIS MUTUAL INSURANCE COMPANY,

   DEFENDANT.

---

APPEAL from an order of the circuit court for St. Croix County: EDWARD F. VLACK III, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1　HRUZ, J.　Charles Rood was injured in the course of his employment with Stockton Stainless, Inc., when his supervisor, Randall Rademaker, drove a large, telescopic forklift (also known as a "telehandler" or a "lull") over Rood's left foot and leg.　Rood collected worker's compensation benefits from his employer's insurer, Selective Insurance Company of South Carolina ("Selective"), but he later filed this negligence action against Rademaker and Selective, pursuant to his employer's "Commercial General Liability" policy ("the Policy") with Selective. The circuit court later dismissed Rood's negligence claim on summary judgment, concluding that the claim was barred by the exclusive remedy provision in Wisconsin's Worker's Compensation Act.　*See* WIS. STAT. § 102.03(2) (2019-20).[1]

¶2　Rood now appeals and argues that an endorsement to the Policy, the "Fellow Employee Extension," waives the exclusive remedy provision in WIS. STAT. § 102.03(2).　In the alternative, Rood contends that an exception to the exclusive remedy provision in § 102.03(2) applies because the telehandler was not owned or leased by his employer and it constitutes a "motor vehicle."

¶3　We conclude that the Policy's express terms, including the Fellow Employee Extension, do not demonstrate an intent to waive the exclusive remedy provision.　The Fellow Employee Extension can be reasonably construed as broadening the definition of an insured to include an employee where worker's compensation law would not apply and where an employee's conduct might fall under an exception to the exclusive remedy provision in WIS. STAT. § 102.03(2).　In addition, the telehandler that caused Rood's injury does not constitute a "motor

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

vehicle" as that term is used in § 102.03(2). Consistent with the purposes of the Worker's Compensation Act and its exclusive remedy provision, the term "motor vehicle" in § 102.03(2) encompasses only those vehicles that are designed primarily for travel on a public roadway or those vehicles that are used on a public roadway at the time of an accident. Here, the telehandler's primary purpose was not for travel on a public road, nor was it used on a public roadway at the time of Rood's injuries. Accordingly, we affirm.

## BACKGROUND

¶4    The following facts are not in dispute for purposes of this appeal. For several months in the fall of 2016, Rood was employed by Stockton Stainless, and his work involved installing stainless steel piping at a factory in Texas. On October 19, 2016, Rood suffered serious foot and ankle injuries after Rademaker drove a telehandler over Rood's left foot and leg. Rademaker was using the telehandler to lift and transport steel piping from an unloading area into the factory while Rood walked alongside the telehandler.

¶5    A telehandler is designed to generally "meet[] the needs of most construction, masonry, landscape and agricultural applications." The telehandler at issue was not owned or leased by Stockton Stainless but, rather, was located at the Texas factory "for all contractors to use." According to Rood, the telehandler was capable of being driven on a public highway and had a driver's cockpit, a "15-foot boom lift," tractor tires, headlights, signal blinkers, and a slow-moving-vehicle sign on the back.

¶6    At the time of Rood's injuries, Stockton Stainless had both a worker's compensation insurance policy and a commercial general liability insurance policy with Selective—the Policy at issue in this appeal. Selective subsequently paid

Rood's worker's compensation benefits pursuant to Wisconsin law and the worker's compensation insurance policy.

¶7 Sometime later, Rood filed this lawsuit, alleging that he suffered injuries due to Rademaker's negligent operation of a motor vehicle and that Selective agreed to defend and indemnify Rademaker under the Policy issued to Stockton Stainless. The parties eventually filed cross-motions for summary judgment.

¶8 The circuit court issued a written decision granting summary judgment in favor of Selective and Rademaker while denying Rood's motion for summary judgment, dismissing his negligence claim in the process. Applying the reasoning in ***Brantner v. ABC Manufacturing Co.***, 217 Wis. 2d 143, 579 N.W.2d 742 (Ct. App. 1998), the court concluded that the Policy did not waive the exclusive remedy provision in WIS. STAT. § 102.03(2). It also determined that the telehandler was not a "motor vehicle" within the meaning of § 102.03(2), pursuant to our supreme court's interpretation of the term "motor vehicle" in ***Rice v. Gruetzmacher***, 27 Wis. 2d 46, 133 N.W.2d 401 (1965).[2]

¶9 Rood now appeals. Additional facts will be noted as necessary below.

## DISCUSSION

### I. Standard of Review

---

[2] In deciding the motions for summary judgment, the circuit court also conducted a choice-of-law analysis and concluded that Wisconsin law should apply. It did so on the bases that Rood and Rademaker were both Wisconsin residents, Selective paid Rood's worker's compensation benefits pursuant to Wisconsin law, and, other than an emergency visit in Texas, all of Rood's medical care and treatment occurred in Wisconsin. Rood does not challenge that determination on appeal, and we therefore do not address that issue further.

¶10 We review a grant of summary judgment de novo, using the same methodology as the circuit court. *Ehr v. West Bend Mut. Ins. Co.*, 2018 WI App 14, ¶7, 380 Wis. 2d 138, 908 N.W.2d 486. Summary judgment must be granted if the pleadings, depositions, answers to interrogatories, admissions and affidavits establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2).

¶11 Rood's appeal challenges the circuit court's summary judgment decision, and it requires the resolution of two main issues. First, whether the "Fellow Employee Extension" in the Policy waived the exclusive remedy provision in WIS. STAT. § 102.03(2), and, second, whether the telehandler was a "motor vehicle" pursuant to an exception to § 102.03(2). To determine whether summary judgment is appropriate in this appeal, we must interpret both the Policy and § 102.03(2). The interpretation of an insurance contract is a question of law that we review de novo. *Grigg v. Aarrowcast, Inc.*, 2018 WI App 17, ¶26, 380 Wis. 2d 464, 909 N.W.2d 183. In addition, the interpretation and application of a statute to undisputed facts are also questions of law that we review de novo. *Ehr*, 380 Wis. 2d 138, ¶7.

## II. "Fellow Employee Extension"

¶12 In Wisconsin, worker's compensation is generally an injured employee's exclusive remedy against an employer, coemployee, and worker's compensation insurance carrier. WIS. STAT. § 102.03(2). An insurer, however, can waive statutory immunity under § 102.03(2) when the express terms of the insurance policy demonstrate an intent to waive that immunity. *Brantner*, 217 Wis. 2d at 147; *Maas v. Ziegler*, 172 Wis. 2d 70, 82-83, 492 N.W.2d 621 (1992).

¶13    When interpreting an insurance policy, "[t]he same rules of construction that govern general contracts are applied to the language in insurance policies.  An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy." *Jackson v. Wisconsin Cnty. Mut. Ins. Corp.*, 2014 WI 36, ¶17, 354 Wis. 2d 327, 847 N.W.2d 384 (citation omitted).  A contract must also be construed so as to give a reasonable meaning to each provision of the contract and to avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage.  *See Goebel v. First Fed. Sav. & Loan Ass'n of Racine*, 83 Wis. 2d 668, 680, 266 N.W.2d 352 (1978).

¶14    As relevant to this appeal, under the Policy's "SECTION I — COVERAGES," "COVERAGE A," Selective agrees to "pay those sums that the insured becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  (Emphasis added.)  The Policy's "SECTION I — COVERAGES," "COVERAGE A," also contains several exclusions, including exclusions for obligations arising under a worker's compensation law and for bodily injury to an employee:

> **2. Exclusions**
>
> This insurance does not apply to:
>
>   ….
>
> **d.** Workers' Compensation And Similar Laws
>
>> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.
>
> **e.** Employer's Liability
>
>> "Bodily injury" to:
>>
>> (1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business ….

In addition, an "insured" is initially defined under the Policy as including employees acting in the scope of their employment, but not if the employee causes bodily injury to a coemployee while in the course of his or her employment:

> **SECTION II — WHO IS AN INSURED**
>
> ….
>
> **2.** Each of the following is also an insured:
>
> **a.** Your … "employees" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" … are insureds for:
>
>> (1) "Bodily injury" or "personal and advertising injury":
>>
>> (a) To … a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business ….

¶15    Rood recognizes that this initial policy language does not provide coverage for his injuries, nor does it waive the exclusive remedy provision in WIS. STAT. § 102.03(2). He argues, however, that an endorsement to the Policy alters these provisions in such a manner as to waive the exclusive remedy provision. Specifically, Rood emphasizes that the "Fellow Employee Extension" changes the definition of an insured—removing the exception for an employee's actions that cause bodily injury to a coemployee—and renders the "Employer's Liability" exclusion inapplicable. The Fellow Employee Extension provides in relevant part:

> **4. FELLOW EMPLOYEE EXTENSION**
>
> Under **SECTION II — WHO IS AN INSURED** Paragraphs **2.a.** and **2.a. (1)** are replaced by the following:

7

**a.** Your … "employees" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. The Employers Liability exclusion **(SECTION I — COVERAGES; COVERAGE A,** exclusion **e.)** does not apply to this provision.

¶16 From the outset, we note that nothing in the Fellow Employee Extension modifies the Policy's insuring agreement that Selective will "pay those sums that the insured becomes *legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Emphasis added.) Although the "legally obligated to pay" language is not dispositive of whether Selective expressly waived the exclusive remedy provision in WIS. STAT. § 102.03(2), the language does demonstrate Selective's intent that it will pay only those sums that an insured becomes legally obligated to pay. In other words, absent an express waiver of the exclusive remedy provision in § 102.03(2), Selective has not agreed to pay for damages that would otherwise be barred by § 102.03(2). *See Danielson v. Larsen Co.*, 197 Wis. 2d 799, 809, 541 N.W.2d 507 (Ct. App. 1995).

¶17 In addition, the Fellow Employee Extension does not alter or eliminate the Policy's Workers' Compensation exclusion, which precludes coverage for obligations arising under a worker's compensation law. Rood correctly observes that the Workers' Compensation exclusion would not bar coverage for his negligence claim because his claim arises under tort law, not under the Worker's Compensation Act. *See Severin v. Luchinske*, 271 Wis. 378, 383, 73 N.W.2d 477 (1955); *see also United States Fid. & Guar. Co. v. PBC Prods., Inc.*, 153 Wis. 2d 638, 642, 451 N.W.2d 778 (Ct. App. 1989). Nonetheless, the exclusion plainly demonstrates Selective's intent that it will not cover an insured's obligations that arise under a worker's compensation law. Such an intent is consistent with, and

does not contradict, the exclusive remedy provision.[3]  *See Danielson*, 197 Wis. 2d at 809; *Brantner*, 217 Wis. 2d at 152.

¶18     In arguing that the Fellow Employee Extension waives the exclusive remedy provision, Rood relies primarily on three cases:  *Maas*; *PBC Products*; and *Backhaus v. Krueger*, 126 Wis. 2d 178, 376 N.W.2d 377 (Ct. App. 1985).  None of these cases are on point, however.  In each case, the court determined that the insurer waived the exclusive remedy provision through policy language that expressly removed an *exclusion* to coverage for bodily injury to coemployees.  *See Maas*, 172 Wis. 2d at 77, 80-81; *PBC Prods.*, 153 Wis. 2d at 643; *Backhaus*, 126 Wis. 2d at 181-82.  In contrast, the Fellow Employee Extension in this case did not remove an exclusion for bodily injury to a coemployee but rather modified the definition of an "insured" to include an employee, under certain circumstances, when the employee caused bodily injury to a coemployee.

¶19     We previously considered a nearly identical modification to the definition of an insured in *Brantner*.  *See Brantner*, 217 Wis. 2d at 147-48, 150.  In

---

[3] Although Rood is correct that the Policy's Workers' Compensation exclusion does not preclude coverage for his negligence claim, the outcome of this case is not controlled by *Severin v. Luchinske*, 271 Wis. 378, 73 N.W.2d 477 (1955), as he contends.  In *Severin*, our supreme court determined that a worker's compensation exclusion did not preclude coverage under an employer's insurance policy because the plaintiff's negligence claim against a coemployee did not arise under a worker's compensation law.  *Id.* at 381-84.  The starting point of the court's analysis in that case, however, began with a determination that the policy at issue provided coverage unless precluded by another provision in the policy.  *Id.* at 381.  The court did not interpret the worker's compensation exclusion in light of the exclusive remedy provision, which at that time protected only employers, *see* WIS. STAT. § 102.03(2) (1953-54), nor did the court determine whether the terms of the policy waived any kind of statutory immunity.

In contrast, the critical question in our analysis is whether the express terms of the Policy demonstrate an intent to waive the exclusive remedy provision.  We conclude that the existence of the Workers' Compensation exclusion in the Policy is consistent with, and does not contradict, the exclusive remedy provision, and it therefore does not demonstrate an intent to waive the exclusive remedy provision.

that case, an injured employee argued that her employer's insurer had waived the exclusive remedy provision under WIS. STAT. § 102.03(2) based on a modification to the definition of an insured. *Brantner*, 217 Wis. 2d at 145-47, 150-51. The policy at issue included an endorsement with a "Fellow Employee Amendment," which removed a previous exception from the definition of an insured for employees who cause bodily injury to coemployees in the course of their employment. *Id.* at 150. We recognized that "the endorsement [did] not waive or override any of the original policy exclusions" and "[e]ven with the expanded definition of an insured," the policy still excluded coverage for the employer's liability under worker's compensation law and for injury to insureds or to employees. *Id.* at 152. We concluded:

> Reading the insurance policy as a whole, we do not construe the endorsement to mean that the policy was intended to waive liability where the worker's compensation law applied. Instead, the only reasonable construction is that the endorsement was *intended to broaden the definition of an insured to include an employee in situations where the worker's compensation law would not apply*.

*Id.* (emphasis added).

¶20 This court's analysis and conclusion in *Brantner* are instructive in this case. Here, the Fellow Employee Extension expanded the definition of an insured to include an employee who causes bodily injury to a coemployee in the course of his or her employment. Although the Fellow Employee Extension also renders the Policy's Employer's Liability exclusion inapplicable, that modification does not demonstrate an intent to waive the exclusive remedy provision. In circumstances where it applies, the Employer's Liability exclusion excludes coverage for bodily injury to an employee arising out of and in the course of the employee's employment or performing duties related to the conduct of the insured's business. The disabling

of that exclusion in the context of an employee causing bodily injury to a coemployee, however, does not conflict with, or contradict, the exclusive remedy provision in WIS. STAT. § 102.03(2).

¶21     Indeed, the exclusive remedy provision itself contains several exceptions where an employee might be held liable for bodily injury to a coemployee.   *See* WIS. STAT. § 102.03(2).   In particular, the exclusive remedy provision

> does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm, or against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemployee of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

*Id.*   Accordingly, the Fellow Employee Extension can be reasonably construed as broadening the definition of an insured to include an employee in circumstances where worker's compensation law does not apply and where that employee's conduct might fall under an exception to the exclusive remedy provision in § 102.03(2).

¶22     Citing *Maas*, Rood argues that the Fellow Employee Extension would be rendered meaningless if it were not construed as waiving the exclusive remedy provision in WIS. STAT. § 102.03(2).   *Maas*, however, is readily distinguishable.  In *Maas*, our supreme court concluded that the policy language removing a fellow employee exclusion would be rendered meaningless unless the language was construed as waiving the exclusive remedy provision.  *Maas*, 172 Wis. 2d at 80-83. The relevant policy language provided that "[t]he exclusion relating to bodily injury to fellow employees does not apply if the bodily injury results from the use of a

11

covered auto *you own.*" *Id.* at 77 (emphasis added). That policy language, however, could not be construed as filling the gap for exceptions to the exclusive remedy provision because the exception for negligent operation of a motor vehicle in § 102.03(2) involves only motor vehicles "not owned or leased by the employer." Thus, that policy language could not be reasonably construed as having any effect, unless the language waived the exclusive remedy provision in such circumstances.

¶23 In contrast, and as explained above, our construction of the Fellow Employee Extension gives reasonable meaning to each provision, including the Fellow Employee Extension itself. *See Maas*, 172 Wis. 2d at 79. The Fellow Employee Extension can be reasonably construed as broadening the definition of an insured where an exception to the exclusive remedy provision might apply and where the claim does not arise under a worker's compensation law. In addition, the Fellow Employee Extension and its modifications do not expressly contradict any of the exceptions in WIS. STAT. § 102.03(2), such that the Fellow Employee Extension could not provide coverage under any circumstances unless the exclusive remedy provision was waived.[4]

¶24 Finally, Rood argues that if we reject his arguments, we should deem the Policy ambiguous and interpret it in favor of coverage. We disagree that the policy language at issue is ambiguous. The language of an insurance policy is ambiguous if it "is susceptible to more than one reasonable construction."

---

[4] Rood further argues—for the first time in his reply brief and in conclusory fashion—that the Fellow Employee Extension would not provide coverage for any exceptions to the exclusive remedy provision because the Policy contains an "Auto" exclusion and an "Expected or Intended Injury" exclusion. We need not address these arguments, however, because they are undeveloped and were raised for the first time in a reply brief. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992); *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

*Wadzinski v. Auto-Owners Ins. Co.*, 2012 WI 75, ¶11, 342 Wis. 2d 311, 818 N.W.2d 819 (citation omitted).

¶25 The Policy's language at issue here is not susceptible to more than one reasonable construction. The Policy unambiguously states that Selective will pay only those sums that an insured becomes "legally obligated to pay." The Policy also contains a Workers' Compensation exclusion that unambiguously provides that Selective will not cover any obligations arising under a worker's compensation law. Although Rood erroneously interprets the Fellow Employee Extension as waiving the exclusive remedy provision, that interpretation is not reasonable because the Fellow Employee Extension neither expressly waives the exclusive remedy provision nor does it contradict the exclusive remedy provision. Therefore, the Policy's relevant language is unambiguous and its express terms do not waive the exclusive remedy provision.[5]

## III. The Meaning of "motor vehicle" under WIS. STAT. § 102.03(2)

¶26 In the alternative, Rood argues that the circuit court should not have dismissed his negligence claim because the underlying facts of his injury fall within an exception to WIS. STAT. § 102.03(2), specifically, the exception for a

---

[5] Rood's final argument regarding waiver of the exclusive remedy provision focuses on the Policy's "Separation of Insureds" clause and this court's interpretation of a similar clause in *Gulmire v. St. Paul Fire & Marine Insurance Co.*, 2004 WI App 18, 269 Wis. 2d 501, 674 N.W.2d 629 (2003). That argument, however, is contingent on this court construing the Workers' Compensation exclusion as "retaining" the exclusive remedy provision. As we have explained, we do not construe the Workers' Compensation exclusion as excluding coverage for Rood's negligence claims. Rather, we construe the Workers' Compensation exclusion as demonstrating Selective's intent not to provide coverage for claims arising under a worker's compensation law, which is consistent with the exclusive remedy provision. In addition, the Fellow Employee Extension does not contradict, or conflict with, the exclusive remedy provision, such that it would demonstrate an intent to waive that provision. We therefore need not address Rood's final argument because our construction of the Policy does not implicate Rood's concerns. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

coemployee's negligent operation of a motor vehicle. That exception provides that the exclusive remedy provision "does not limit the right of an employee to bring action … against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer." Sec. 102.03(2). As noted earlier, the sole issue related to the applicability of this exception, here, is whether the telehandler constitutes a "motor vehicle" within the meaning of § 102.03(2).

¶27 Our interpretation of a statute's meaning begins with the statute's language. *Townsend v. ChartSwap, LLC*, 2021 WI 86, ¶12, 399 Wis. 2d 599, 967 N.W.2d 21. If the meaning is plain and unambiguous, we ordinarily stop our inquiry. *Id.* We give statutory language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* (citation omitted). We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole." *Id.*, ¶13 (citation omitted). "A statute is ambiguous 'if it is capable of being understood by reasonably well-informed persons in two or more senses.'" *McNeil v. Hansen*, 2007 WI 56, ¶9, 300 Wis. 2d 358, 731 N.W.2d 273 (citation omitted). If a statute is ambiguous, we may consider external sources, such as legislative history, to assist in our interpretation. *Id.*

¶28 Rood contends that the meaning of "motor vehicle" in WIS. STAT. § 102.03(2) is ambiguous and "susceptible to multiple meanings." He notes that "motor vehicle" is not defined under WIS. STAT. ch. 102 and that "motor vehicle could include an automobile, a forklift, a lawn mower, a boat, a pallet jack, … a tractor[, or] … a vehicle that 'could be' driven on a public highway." Selective and Rademaker, on the other hand, contend that the meaning of "motor vehicle" is unambiguous and means only those vehicles that operate on a public highway. Selective urges us to follow our supreme court's interpretation of "motor vehicle"

14

in **Rice**, which involved an interpretation of Wisconsin's direct-action statutes.  *See* **Rice**, 27 Wis. 2d at 48-49; *see also* WIS. STAT. §§ 204.30(4), 260.11 (1963-64).  To our knowledge, no published or authored Wisconsin appellate opinion has interpreted the term "motor vehicle" in § 102.03(2).

¶29    Beginning with the language of the statute, WIS. STAT. ch. 102 does not define the term "motor vehicle," nor does it use the term in any section other than WIS. STAT. § 102.03(2).  In addition, the context of § 102.03(2) does not provide any hints regarding how the term "motor vehicle" should be interpreted.  Beyond ch. 102, the Wisconsin Statutes contain several broad, but sometimes technical, definitions of "motor vehicle" and "vehicle."  *See, e.g.*, WIS. STAT. §§ 340.01(35), (74), 344.01(2)(b), 632.32(2)(at).  Those definitions, however, are not particularly helpful to our interpretation of "motor vehicle" in § 102.03(2) because they generally bear some relation to the particular context of the statutes in which they appear.

¶30    Ultimately, both parties have identified reasonable interpretations of the term "motor vehicle" in WIS. STAT. § 102.03(2).  "Motor vehicle" could be reasonably interpreted broadly as including any self-propelled vehicle or device that is capable of being used to transport persons or property on a public roadway.  *See generally* WIS. STAT. § 340.01(35), (74).[6] On the other hand, "motor vehicle" could also be reasonably construed narrowly—consistent with the more ordinary use of

---

[6]  "Motor vehicle" is defined in WIS. STAT. ch. 340 as "a vehicle, including a combination of 2 or more vehicles or an articulated vehicle, which is self-propelled, except a vehicle operated exclusively on a rail."  WIS. STAT. § 340.01(35).  Chapter 340 also defines "vehicle" as meaning "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except railroad trains."  Sec. 340.01(74).

the term—as including only self-propelled vehicles or devices that are designed and primarily used to transport persons or property on a public roadway. *See Motor vehicle*, WEBSTER'S THIRD NEW INT'L DICTIONARY (unabr. 1993) ("[A]n automotive vehicle not operated on rails; *esp*: one with rubber tires for use on highways."); *see generally* WIS. STAT. §§ 340.01(35), (74), 632.32(2)(at).[7] Indeed, in the context of a different statute, our supreme court has interpreted the meaning of "motor vehicle" as not encompassing vehicles "designed primarily for uses dissimilar to transporting or drawing persons or property upon a highway … unless [it is] being operated upon a highway at the time of accident." *See **Rice***, 27 Wis. 2d at 51 (concluding that a forklift was not a "motor vehicle" under the direct-action statutes unless it was being operated on a highway at the time of an accident).[8] Because the term "motor vehicle" could be reasonably interpreted in multiple ways, we conclude that the term is ambiguous, and we therefore consider the legislative history of § 102.03(2) in ascertaining the meaning of "motor vehicle."

¶31     We previously examined the legislative history and purpose of WIS. STAT. § 102.03(2) in ***Hake v. Zimmerlee***, 178 Wis. 2d 417, 504 N.W.2d 411 (Ct. App. 1993), while discerning the meaning of "operation" in the phrase "operation of a motor vehicle." ***Id.*** at 420-22. In doing so, we recognized that "[o]ne purpose of the Worker's Compensation Act is to allocate the cost of employment injuries to the industry or business in which they occur and, ultimately,

---

[7] WISCONSIN STAT. § 632.32(2)(at) defines "motor vehicle" as "a self-propelled land motor vehicle designed for travel on public roads and subject to motor vehicle registration under [WIS. STAT.] ch. 341."

[8] Although ***Rice v. Gruetzmacher***, 27 Wis. 2d 46, 51, 133 N.W.2d 401 (1965), provides a persuasive and reasonable interpretation of the term "motor vehicle" in a different statute, Selective fails to explain—based on the plain language of WIS. STAT. § 102.03(2)—why a broader construction of "motor vehicle" would be unreasonable. We therefore reject Selective's argument that the term "motor vehicle" in § 102.03(2) is unambiguous.

to the consuming public as part of the price for the goods or services offered." *Id.* at 421-22. We also noted that the legislature amended § 102.03(2) in 1977 to prohibit most work-related injury suits between coemployees. *Hake*, 178 Wis. 2d at 422.

¶32 That 1977 amendment occurred in accordance with recommendations from the Worker's Compensation Advisory Council ("the Advisory Council"), which explained that the amendment

> would permit a suit where there was an assault by the co-employe or where there was negligent operation of a motor vehicle not owned or leased by the employer. It is a fact that virtually all insurance policies issued to employers for public liability or for fleet coverage on employer owned or leased vehicles exclude payment of damages where the claim of an employe is against a co-employe. The result is that the employe who is being sued is left without protection and the little person is the one who gets hurt. The attention of the Advisory Council has been called to cases where … [the co-employe] who was sued was placed in a financial position[,] because of the cost of defending or because of the judgment for damages that was recovered[,] that the employe would not be able to recover from financially for many years or for the balance of his [or her] life.

*Id.* at 422-23 (some alterations in original). The Advisory Council was thus concerned with "the financial burden that coemployee suits imposed upon workers" and "advised the legislature to recreate the statute so that coemployee immunity would be the rule, and coemployee liability would be the exception to that rule." *Id.* at 423. Based on "the strong policy concerns [underlying] the rule of coemployee immunity," we concluded in *Hake* that we had to narrowly construe the phrase

17

"operation of a motor vehicle" in WIS. STAT. § 102.03(2).[9] **Hake**, 178 Wis. 2d at 423, 426.

¶33 Rood acknowledges that WIS. STAT. § 102.03(2) seeks to protect coemployees from the financial burdens of a lawsuit. Still, he argues that we should construe "motor vehicle" broadly to include all self-propelled devices that "could be" driven on a public roadway. He contends the telehandler that caused his injuries was capable of being driven on a public road because it was equipped with tractor tires, headlights, signal blinkers, and a slow-moving-vehicle sign.[10] In support of his definition of "motor vehicle," Rood cites our decision in **State v. Shoeder**, 2019 WI App 60, 389 Wis. 2d 244, 936 N.W.2d 172.

¶34 Rood's reliance on **Shoeder** is misplaced. In that case, we concluded the riding lawn mower at issue was a "motor vehicle" as the term is used in the operating while intoxicated (OWI) statute, WIS. STAT. § 346.63(1). **Shoeder**, 389 Wis. 2d 244, ¶21. We reached that conclusion based on the express statutory definitions provided in WIS. STAT. § 340.01(35) and (74). **Shoeder**, 389 Wis. 2d 244, ¶11. Unlike the statutory definition of "motor vehicle" that applies for

---

[9] In a more recent case, our supreme court again examined the legislative history of WIS. STAT. § 102.03(2). *See* **McNeil v. Hansen**, 2007 WI 56, ¶¶12-15, 300 Wis. 2d 358, 731 N.W.2d 273. The court cited our discussion in **Hake v. Zimmerlee**, 178 Wis. 2d 417, 504 N.W.2d 411 (Ct. App. 1993), and concluded that the exception at issue in § 102.03(2) must be narrowly interpreted because of both the purpose of § 102.03(2) and the general rule of interpreting statutory exceptions narrowly. *See* **McNeil**, 300 Wis. 2d 358, ¶16.

[10] There were factual issues regarding whether the telehandler had lights, signal blinkers, and a slow-moving-vehicle sign. For our purposes, we will assume that the telehandler had all of the disputed equipment and was capable of being driven on a public roadway because we must draw all reasonable inferences in favor of Rood as the nonprevailing party on summary judgment. *See* **H&R Block E. Enters. v. Swenson**, 2008 WI App 3, ¶11, 307 Wis. 2d 390, 745 N.W.2d 421 (2007).

purposes of the OWI statute, the term "motor vehicle" is not expressly defined in WIS. STAT. § 102.03(2) or elsewhere in the Worker's Compensation Act.

¶35    In addition, the purpose of the OWI statute—as well as other statutes to which the definition of "motor vehicle" in WIS. STAT. § 340.01(35) applies—is to deter drunk driving and to promote and ensure the safety of all highway users in Wisconsin.  *See McNeil*, 300 Wis. 2d 358, ¶17; *see also* WIS. STAT. § 351.01(1); *State v. Hart*, 89 Wis. 2d 58, 66, 277 N.W.2d 843 (1979) ("The primary purpose of defining and proscribing conduct in [WIS. STAT. chs. 340 to 349] is the regulation of drivers and motor vehicles for the promotion of safety on the highways.").  A broad definition and construction of "motor vehicle" under § 340.01(35) facilitates those purposes.  In contrast, the purposes of WIS. STAT. § 102.03(2) necessitate that the term "motor vehicle" be interpreted narrowly to allocate the cost of workers' injuries to the industry in which they occur and to protect workers from financial burdens of coemployee suits.

¶36    Rood also suggests that *McNeil* supports his argument that the term "motor vehicle" in WIS. STAT. § 102.03(2) includes vehicles that "could be" driven on a public roadway because the court noted several times that the vehicle at issue was not in a condition in which it could be driven on a public roadway. We disagree. Although the court in *McNeil* recognized that "the condition of the vehicle is such that it could not then be driven on a public roadway," those statements were based on the factual circumstances of the case.  *See McNeil*, 300 Wis. 2d 358, ¶¶2-3, 8, 23, 28.  The court never addressed the meaning of the term "motor vehicle" in § 102.03(2) or whether the vehicle in that case constituted a "motor vehicle." Rather, the court's discussion was tailored to the issue at hand: whether the defendant's actions constituted "*operation* of a motor vehicle."  *McNeil*, 300 Wis. 2d 358, ¶8 (emphasis added).  The court's comments that the vehicle could not

be driven on a public roadway are therefore neither controlling nor instructive to our analysis here.

¶37     In light of the plain purposes underlying WIS. STAT. § 102.03(2), we conclude that the term "motor vehicle" in § 102.03(2) must be interpreted narrowly in a manner consistent with our supreme court's interpretation of "motor vehicle" in *Rice*. That is to say, the term "motor vehicle" in § 102.03(2) does not include vehicles that are designed primarily for uses other than transporting persons or property upon a public roadway, unless the vehicle was being operated upon a public roadway at the time the employee was injured. *See Rice*, 27 Wis. 2d at 51. Work injuries are a foreseeable and common consequence of a coemployee's negligent use of a large, self-propelled machine that is not owned or leased by the employer and that has a primary purpose and use other than transporting persons or property on a public roadway—especially in the context of multiple contractors and subcontractors working together and sharing equipment. These injuries are directly related to an employee's employment, and the industry and the consuming public should bear the costs of these injuries, not the negligent coemployee. The purposes of § 102.03(2) are therefore advanced by interpreting the term "motor vehicle" in § 102.03(2) in the same manner as our supreme court interpreted the term in *Rice*.

¶38     When applying the meaning of the term "motor vehicle" in WIS. STAT. § 102.03(2) to the facts of this case, the telehandler that caused Rood's injuries does not qualify as a "motor vehicle." Although the telehandler was capable of being driven on a public roadway, its primary purpose and intended use was not for transporting persons or property on a public roadway. Rather, it was designed to "meet[] the needs of most construction, masonry, landscape and agricultural applications." In addition, the telehandler was not being operated on a public roadway at the time of Rood's injuries but rather was being used to move steel

20

piping within a factory. The underlying facts of Rood's injuries are precisely the kind of circumstances under which the exclusive remedy provision in § 102.03(2) sought to limit an injured employee's recovery to worker's compensation benefits.

*By the Court.*—Order affirmed.